UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA 2019 APR 10 AM 10:08
FORT MYERS DIVISION

NIGHT OWL SP, LLC,

   Plaintiff,

v.             Case No.: 2:19-cv-109-FtM-38UAM

DONGGUAN AUHUA
ELECTRONICS CO., LTD. and JUN
LI,

   Defendants.
_____/

## OPINION AND ORDER

Before the Court is Plaintiff Night Owl SP, LLC's Renewed Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 15).

### Background

This is a trademark infringement case. Night Owl is a Florida company that sells home security equipment under the registered NIGHT OWL trademark. Night Owl also uses certain design marks for its products. Defendant Dongguan Auhua Electronics Co., Ltd. is a Chinese company that supplied Night Owl with component products from 2012 to 2017, and Defendant Jun Li is Auhua's President. In its Amended Complaint, Night Owl accuses Defendants of selling counterfeit products bearing the NIGHT OWL mark and its design marks. (Doc. 24).

Auhua has registered several of Night Owl's design marks in China and has used these registrations to disrupt exportation of Night Owl's products from China. When the original Complaint was filed, Auhua was seeking to register three of Night Owl's design marks with the United States Patent and Trademark Office: , , and

Night Owl is contesting Auhua's Chinese registrations and worries that the USPTO applications could undermine its position in the Chinese proceeding and further hinder its ability to import its products from China. Night Owl thus sought a temporary restraining order directing the USPTO to freeze Auhua's applications during litigation. The Court denied Night Owl's motion because it did not comply with Federal Rule of Civil Procedure 65(b). The USPTO approved Auhua's trademark applications the next day, so Night Owl renewed its motion for a TRO and preliminary injunction, requesting cancellation of those registrations instead of a freeze. The Court denied the TRO because cancellation is not a temporary, status-quo-preserving remedy and scheduled a hearing on the preliminary injunction, which it held on April 9, 2019.

With the Court's approval, Night Owl served Auhua by delivering the Summons, Amended Complaint, and other filings to the Director of the USPTO.[1] (Doc. 27). Li has not been served. Night Owl sent notice of the hearing to ten email addresses associated with Defendants and two email addresses belonging to attorneys representing Auhua in related proceedings. (Doc. 28). Night Owl also delivered physical copies to the Hong Kong office of Auhua's trademark agent, Auhua's office in Dongguan, China, and the Dongguan offices of three attorneys representing Auhua in related matters. Attempts to hand-deliver documents to Li failed, but copies were left at his home, with his uncle, and at the local Villager's Committee. A legal assistant with Night Owl's Hong Kong counsel spoke with Li by phone and waited outside his office until security escorted him out of the building, but Li refused to accept any documents. After reviewing Night Owl's

---

[1] Under 15 U.S.C. § 1051(e), foreign trademark applicants can designate domestic agents for service, and if they do not, process can be served on the USPTO Director.

2

submissions, the Court is confident that Defendants are aware of this case and that any ignorance of the hearing was willful. Although Li has not been served, the Court finds that Night Owl's attempts to notify him meet the requirements for a temporary restraining order.

## Discussion

"The purpose of the preliminary injunction is to reserve the positions of the parties as best we can until a trial on the merits may be held." *Bloedorn v. Grube*, 631 F.3d 1218, 1229 (11th Cir. 2011). A party seeking a preliminary injunction must show: (1) a substantial likelihood of success on the merits; (2) irreparable injury absent the injunction; (3) the threatened injury outweighs the potential harm to the enjoined party; and (4) the injunction would not disserve the public interest. *Id.*

A. <u>Likelihood of Success on the Merits</u>

Night Owl can prevail on its trademark infringement, counterfeiting, and civil infringement counts if it shows: (1) it owns a registered or otherwise valid trademark; and (2) Defendants' use of the mark is likely to cause confusion. *Commodores Entm't Corp. v. McClary*, 879 F.3d 1114, 1131-32 (11th Cir. 2018). Night Owl has proven that it owns the NIGHT OWL mark and has registered it on the Principal Register. (Doc. 24-1). And it has shown that it has used the design marks at issue since 2009. (Doc. 7-1 at 4). As for the second element, the Eleventh Circuit uses a seven-factor test to determine likelihood of confusion: (1) the strength of the allegedly infringed mark; (2) the similarity of the infringed and infringing marks; (3) the similarity of the goods and services the marks represent; (4) the similarity of the parties' trade channels and customers; (5) the similarity of advertising media used by the parties; (6) the intent of the alleged infringer to

misappropriate the proprietor's goodwill; and (7) the existence and extent of actual confusion in the consuming public. *Savannah Coll. of Art and Design, Inc. v. Sportswear, Inc.*, 872 F.3d 1256, 1264 (11th Cir. 2017).

*(1) Strength of the mark*

The word mark NIGHT OWL is incontestable and thus presumed to be a relatively strong mark. *See Fla. Int'l Univ. Bd. of Trustees v. Fla. Nat. Univ., Inc.*, 830 F.3d 1242, 1257 (11th Cir. 2016). Night Owl has spent tens of millions of dollars to promote its goods and trademarks. (Doc. 7-1 at 4). In the decade Night Owl has used its word mark and design marks, it has sold over 3.2 million units. *Id.* The Court finds that Night Owl's word mark and design marks are strong, descriptive marks that have acquired secondary meaning.

*(2) Similarity of the marks and (3) Similarity of the goods*

Defendants are using marks identical or nearly identical to Night Owl's marks. (Doc. 7 at 12-13). And like Night Owl, Defendants are using the marks on home security products, sometimes identical or nearly identical to Night Owl's products. *Id.* In fact, Defendants so slavishly copied Night Owl's products that some of the packaging submitted to the USPTO with their Statements of Use include Night Owl's product numbers, website, and Florida address. *See, e.g. id* at 106).

*(4) Similarity of trade channels and customers and (5) Similarity of advertising*

Night Owl and Defendants use the internet to sell and advertise their products to consumers in the United States. *Id.* at 4, 13. So at the very least, their sales and advertising channels overlap.

*(6) Defendants' Intent*

This factor asks whether Defendants adopted Night Owl's marks "with the intention of deriving a benefit from [Night Owl]'s business reputation." *Caliber Auto. Liquidators, Inc. v. Premier Chrysler, Jeep, Dodge, LLC*, 605 F.3d 931, 940 (11th Cir. 2010). The Defendants' former relationship with Night Owl, their use of Night Owl's exact marks, their slavish copying of Night Owl's products and packaging, and their attempts to prevent Night Owl from exporting its products from China all suggest that Defendants intend to free-ride on Night Owl's goodwill and usurp its share of the market.

*(7) Actual confusion*

Night Owl has not presented evidence of actual confusion.

Considering the above seven factors, the Court finds that Night Owl has shown by clear and convincing evidence that Defendants' use of its marks is likely to cause confusion. Night Owl has thus established a strong likelihood of success on the merits.

B. <u>Irreparable Injury</u>

The 11th Circuit "has held that a sufficiently strong showing of likelihood of confusion caused by trademark infringement may by itself constitute a showing of a substantial threat of irreparable harm." *Boulan S. Beach Master Ass'n, Inc. v. Think Props., LLC*, 617 F. App'x 931, 934 (11th Cir. 2015). Preliminary injunctions are common in trademark actions because legal remedies are ordinarily inadequate for consumer confusion and reputational damage. *Id.* Night Owl has shown a strong likelihood of confusion. It is thus likely to suffer damage to its reputation and goodwill. Night Owl also credibly argues that Defendants' use of its marks to disrupt its supply chain is causing

5

irreparable injury by damaging customer relationships. Night Owl has made a strong enough showing that it will continue to suffer irreparable injury without an injunction.

C. Balance of Hardships

Night Owl argues that Defendants will not suffer any cognizable hardship from an injunction because it only seeks to prohibit unlawful activity and cancel fraudulently obtained trademarks. (Doc. 31-1 at 23-24). The Court agrees. The balance of the equities strongly favors Night Owl.

D. Public Interest

The public has an interest in not being misled about the source of trademarked products and in an accurate trademark registry. An injunction would serve these public interests.

E. Relief Requested by Night Owl

Night Owl seeks two types of relief: (1) cancellation of Auhua's three USPTO registrations and (2) an order enjoining Defendants from certain conduct relating to their use of Night Owl's marks. The injunctive relief is commonly requested in trademark cases and would prohibit Defendants from using the marks, falsely stating or implying an association with Night Owl, destroying infringing materials, and transferring ownership of the registered marks. Cancellation, on the other hand, is unusual in a preliminary injunction, but so are the circumstances that have led to the request. Night Owl seeks cancellation to stop Auhua from using the USPTO registrations to further frustrate its ability to import its products from China. Auhua has already used its Chinese registrations to cause customs officials to seize Night Owl's goods. In proceedings relating to the

seizure, Night Owl is asserting a defense based on its trademark rights in the U.S. Auhua's U.S. registrations undermine that defense.

District courts have broad discretion in fashioning injunctive relief. *United States v. Oakland*, 532 U.S. 483, 495 (2001). And the Lanham Act gives district courts authority to cancel fraudulently obtained trademark registrations. 15 U.S.C. § 1119; 15 U.S.C. § 1064. The Court finds that Night Owl has shown by clear and convincing evidence that it is entitled to an order cancelling Auhua's trademark registrations. In each of Auhua's trademark applications, Li declared, "no other persons...have the right to use the mark in commerce." (*See, e.g.,* Doc. 7-1 a 43). Defendants' past relationship with Night Owl and its use of Night Owl packaging in its statements of use firmly establish that Li's declarations were fraudulent. Cancellation is an appropriate remedy here.

Accordingly, it is now

**ORDERED:**

Plaintiff Night Owl SP, LLC's Renewed Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 15) is **GRANTED in part.**

(1) The USPTO is **DIRECTED** to immediately cancel U.S. Registration Nos. 5,692,832, 5,692,833, and 5,693,172.

(2) The Clerk of the Court is **DIRECTED** to certify this Order to the Director of the USPTO in accordance with 15 U.S.C. § 1119.

(3) Defendants Dongguan Auhua Electronics Co., Ltd. and Jun Li (including each of their agents, officers, employees, representatives, successors, assigns, and all other persons acting for, with, by, through or under authority of Defendants,

or in concert or participation with them, in accordance with Federal Rule of Civil Procedure 65) are **RESTRAINED, ENJOINED, AND PROHIBITED FROM**:

a. Manufacturing, distributing, marketing, advertising, promoting, transporting, disposing of, selling, offering for sale, or otherwise distributing any good or product that uses any of Night Owl's registered or unregistered trademarks, including the NIGHT OWL word mark and Night Owl's "", "", and "" design marks (the "Marks"), or to any mark that is confusingly similar to any of the foregoing;

b. Hosting, acting as Internet Service Provider for, operating, or using any website to advertise, offer for sale, or sell any products bearing any of Night Owl's registered or unregistered trademarks, or linking to any website or web content to any such website;

c. Using any email address, email list, electronic bulletin board, listserv, etc., to offer for sale or sell any merchandise bearing Night Owl's registered or unregistered trademarks;

d. Falsely stating or implying Night Owl's endorsement, support, or approval of Defendants' merchandise or engaging in any act or series of acts which, either alone or in combination, constitute unfair methods of competition with Night Owl, and from otherwise interfering with or injuring Night Owl's Marks or the goodwill associated therewith;

e. Representing or implying that Defendants are in any way sponsored by or affiliated with, or have been endorsed, approved, or licensed by Night Owl;

f. Secreting, destroying, altering, removing, or otherwise dealing with merchandise bearing Night Owl's Marks, or any books or records of any type that contain any information relating to the manufacturing, producing, importing, exporting, distributing, circulating, selling, marketing, offering for sale, advertising, promoting, or displaying of merchandise that infringes Night Owl's Marks;

g. Effecting assignments or transfers, forming new entities or associations, or using any other device to circumvent or otherwise avoid the prohibitions set forth herein;

h. Selling or transferring ownership or control of Dongguan Auhua Electronics Co., Ltd., U.S. Trademark Registrations 5,692,832, 5,692,833, and 5,693,172, and www.dgauhua.com to any third party; and

i. Assisting, inducing, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in paragraphs (a) through (h).

(4) Defendants are **ORDERED** to provide a copy of this Order to each of their agents, officers, employees, representatives, successors, assigns, and all other persons acting for, with, by, through, or under Defendants' authority, or

in concert or participation with them with respect to the issues involved in this litigation.

(5) This Order will expire as to Defendant Jun Li after ten days, but Li may continue to be bound by its terms as an officer of Dongguan Auhua Electronics Co., Ltd.

(6) Night Owl is **ORDERED** to post a bond in the amount of **$10,000.000**.

**DONE** and **ORDERED** in Fort Myers, Florida this 10th day of April, 2019.

Paul A. Magnuson
United States District Court Judge

Copies:    All Parties of Record
United States Patent and Trademark Office