UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

NIGHT OWL SP, LLC,

     Plaintiff,

v.                                                      Case No. 2:19-cv-109-FtM-38NPM

DONGGUAN AUHUA ELECTRONICS
CO., LTD. and JUN LI,

     Defendants.

_____

**ORDER**

Plaintiff Night Owl brought this trademark-infringement action for injunctive relief and damages against two defendants domiciled in the People's Republic of China: a former supplier, Dongguan Auhua Electronics, and its president, Jun Li. (Docs. 1, 24). Having perfected service against Auhua (Doc. 27), Night Owl obtained a preliminary injunction against it in April 2019. (Doc. 39). And with no attempt by Auhua to defend this matter, Night Owl obtained an order making the preliminary injunction permanent and granting a default final judgment against Auhua for $2 million in statutory damages. (Docs. 45, 46).

Along the way, Night Owl requested, but was denied, permission to serve Li via a court-ordered method under Rule 4(f)(3) of the Federal Rules of Civil Procedure in lieu of using China's central authority pursuant to Rule (f)(1). (Doc. 23). And the Court ordered Night Owl to diligently serve Li by January 16, 2020. (Docs. 19, 49). With no attempt to serve Li in the more than eighteen months this action has been pending, Night Owl now seeks another extension of time to perfect service (Doc. 52) and asks the Court, once

again, to order an alternative method of service under Rule 4(f)(3). (Doc. 51). Having failed to provide good cause for another extension of time, or for revisiting the Court's prior orders requiring Night Owl to make diligent use of China's central authority to perfect service, Night Owl's motions must be denied.

**Serving Defendants in China**

Pursuant to the three subsections of Rule 4(f), individuals in foreign countries may be served with process one of three ways. Subsection (f)(1) provides for service by any internationally agreed means, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents. Subsection (f)(2) authorizes various methods of service when there is no internationally agreed means, or when an international agreement allows but does not specify means. And subsection (f)(3) provides that the court may authorize other means not prohibited by international agreement.

Because China and the United States are members of the Hague Service Convention,[1] which specifies use of a designated central authority in each country as an internationally agreed means of service for defendants with known addresses,[2] resort to the means authorized by (f)(2) is not available for perfecting service in China on such

---

[1] *See Chanel, Inc. v. Zhixian*, No. 10–cv–60585, 2010 WL 1740695, at *2 n.3 (S.D. Fla. Apr. 29, 2010).

[2] "The primary innovation of the Hague Service Convention—set out in Articles 2–7—is that it requires each state to establish a central authority to receive requests for service of documents from other countries. When a central authority receives an appropriate request, it must serve the documents or arrange for their service, Art. 5, and then provide a certificate of service, Art. 6." *Water Splash, Inc. v. Menon*, 137 S. Ct. 1504, 1508 (2017) (internal quotations and citation omitted).

defendants. *See Prince v. Gov't of People's Republic of China*, No. 13-cv-2106 (TPG), 2017 WL 4861988, *6 (S.D.N.Y. Oct. 25, 2017). So, absent waiver,[3] litigants must perfect service on individuals in China with known addresses under Rule 4(f)(1) or (f)(3).

Furthering the interests of both judicial economy and international comity, Rule 4(f) "favors the use of internationally agreed means of service." Fed. R. Civ. P. 4(f) advisory committee's note to 1993 amendment.[4] When a litigant attempts to perfect service via the Hague Service Convention under (f)(1)—that is, without court involvement, as service is normally done—and encounters barriers such as a central authority that either refuses or fails to cooperate, the litigant is not left without recourse. "In such cases, resort may be had to the provision set forth in subsection (f)(3)," and the court may direct a special method of service neither explicitly authorized nor prohibited by international agreement. *Id*. But in practice, it seems uncommon for resort to (f)(3) to become necessary when perfecting service on defendants in China.

In fact, without much if any delay, litigants routinely obtain default judgments against defendants in China after serving them via China's central authority pursuant to Rule 4(f)(1). For instance, in *St. Paul Fire & Marine Ins. Co. v. Chaodi Electrical Appliance Co., Ltd.*, No. 1:06-cv-0735-JOF, 2008 WL 11415869 (N.D. Ga. Jan. 18, 2008), a

---

[3] Pursuant to Rule 4(d), individuals in foreign countries have "a duty to avoid unnecessary expenses of serving the summons," and may waive service of process. *See Lozano v. Bosdet*, 693 F.3d 485, 488 (5th Cir. 2012)

[4] In complementary fashion, both the Federal Rules of Civil Procedure and the Hague Service Convention are meant to facilitate and encourage the earliest possible joinder of parties. *See* Fed. R. Civ. P. 1, 4; Hague Service Convention, preamble, Nov. 15, 1965, 20 U.S.T. 361 (memorializing that the member states agreed to the Convention because they wanted to ensure that service abroad would "be brought to the notice of the addressee in sufficient time" by "simplifying and expediting" mutual judicial assistance for that purpose).

certificate from the central authority averred that Chaodi Electrical was served in China within four months of the issuance of the summons, and with no appearance by Chaodi Electrical, the court entered a default judgment against it for more than $240,000. Additionally, in a trade-infringement action like this one, the court in *Lashea, LLC v. Ningbo Ocean Textiles Co., Ltd.*, No. 5:08-cv-1162-SLB, 2011 WL 13286041 (N.D. Ala. Aug. 29, 2011), entered a default judgment against Ocean Textiles for nearly $260,000 because the central authority perfected service against Ocean Textiles in China, and Ocean Textiles failed to appear or otherwise respond to the complaint.[5]

Thus, before a litigant wishing to circumvent an internationally agreed means of service should be allowed to burden the court with analyzing the propriety of an alternative method, it should first be shown that diligent use of the internationally agreed means has proven unsatisfactory, or that making use of it would be futile.[6] *See Federal Trade Comm'n v. Vacation Comms. Group, LLC*, No. 6:13-cv-789-Orl-18DAB, 2014 WL 12823960, *3 (M.D. Fla. Feb. 27, 2014) (Before allowing a plaintiff to involve the court in perfecting service of process under Rule 4(f)(3), a "court may require the plaintiff to show that reasonable efforts to serve the defendant have already been made, and that the court's intervention will avoid further burdensome or futile attempts at service."); *International Designs Corporation, LLC v. Qingdao Seaforest Hair Products Co., Ltd.*, No.

---

[5] *See also In re Chinese-Manufactured Drywall Products Liability Litigation*, 742 F.3d 576, 581, 593-595 (5th Cir. 2014) (affirming refusal to vacate default judgment obtained after serving defendant in China—within three months of the initiation of the action—via the central authority under the Hague Convention).

[6] *Cf. Backjoy Orthotics, LLC v. Forvic Int'l Inc.*, No. 614-cv-249-Orl-41TBS, 2016 WL 7664290, *4 (M.D. Fla. Mar. 7, 2016) ("[B]efore a plaintiff can circumvent the methods for service of process authorized by the Hague Convention, the plaintiff must put forth reasonable diligence in attempting to discover the defendant's address.")

17-60431-CIV-MORENO, 2018 WL 2364297, *3 (S.D. Fla. Jan. 4, 2018) ("Plaintiffs should make an effort to effect Hague Convention service before seeking alternate service."); *see also Microsoft Corp. v. Buy More, Inc.*, 703 F. App'x. 476, 480 (9th Cir. 2017) (affirming order allowing plaintiff to serve foreign defendant pursuant to Rule 4(f)(3) when plaintiff showed it first "diligently attempted to serve [defendant]" by other means).[7] But Night Owl has never made, or attempted to make, any such showing.

**The Absence of Any Attempt by Night Owl to Serve Li**

To this day—more than eighteen months after filing suit against Li and his company—Night Owl has yet to obtain a summons and make any attempt to serve Li with process. Instead, and even after the Court expressly directed Night Owl to diligently serve Li with process, Night Owl implicitly insists it will not undertake any such effort until the Court allows it to forego use of the internationally agreed means of service.

Just after the initiation of this action, Night Owl asked the Court to authorize an alternative means of service under Rule 4(f)(3). (Doc. 18). With no showing that service could not be perfected without court involvement, the Court entered two orders in March 2019 declining Night Owl's request and directing it "to make diligent efforts" to serve Li with process through the Hague Service Convention. (Docs. 19, 23). Night Owl ignored the Court's directive. Instead, though Night Owl immediately obtained a summons and perfected service in March 2019 on Li's company, Auhua,[8] Night Owl took no steps to serve Li.

---

[7] Consistent with the plain text and structure of Rule 4, the Court does not suggest that the subsections of Rule 4(f) are hierarchical, or that exhaustion of service methods under subsections (f)(1) or (f)(2) is a prerequisite for service under subsection (f)(3).

[8] Pursuant to 15 U.S.C. § 1051(e) and with the Court's approval, Night Owl served Auhua

Night Owl's efforts to provide prior notice to both Li and his company about the preliminary injunction hearing, however, indicate that Li could have been served expeditiously by the central authority in China had it been engaged by Night Owl to do so. In fact, Night Owl's investigators in China located a friend of Li, spoke with Li on his mobile phone (Doc. 28-2, ¶¶ 8, 11), and delivered various items from the docket (but no summons, because none was obtained) to Li's residence, his uncle living in the same village, and to an officer of the governing Villager's Committee. (Doc. 28-3, ¶¶ 5, 10-12). Notably, a certificate of service from China's central authority would have been conclusive. *See Unite Nat'l Ret. Fund v. Ariela, Inc.*, 643 F. Supp. 2d 328, 334-336 (S.D.N.Y. 2008) (reasoning that a central authority's certificate of service precludes a defendant from arguing that service did not comport with the foreign country's law). And if Li had failed to appear and defend after being served by China's central authority, a default judgment against him would have had the force of the Hague Service Convention behind it. *See Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 706 (1988) ("[P]arties that comply with the Convention ultimately may find it easier to enforce their judgments abroad.").

With no doubt that Li and Auhua had received prior notice[9] (Docs. 28-2, 28-3), the Court held a preliminary injunction hearing on April 9, 2019. (Doc. 36). During the hearing, Night Owl acknowledged that Li had not been served but argued there would be no need

---

by delivering the Summons, Amended Complaint, and other filings to the Director of the United States Patent and Trademark Office. (Docs. 23, 27).

[9] To be clear, "notice is not service." *Hyundai Merch. Marine Co. v. Grand China Shipping (Hong Kong) Co.*, 878 F. Supp. 2d 1252, 1256-1257 (S.D. Ala. 2012).

for another hearing to obtain an injunction against him because, given his role as an officer of the company, the injunction would "cover Mr. Li anyway;" and, thus, an injunction against Auhua only would essentially provide Night Owl "the complete relief [it] need[s]." (Doc. 38, pp. 4-5). The Court granted Night Owl's request for a preliminary injunction against Auhua (Doc. 39), and with no appearance by Auhua, the Court subsequently entered an order in October 2019 making the preliminary injunction permanent and granting a default judgment against Auhua for $2 million in Lanham Act damages. (Doc. 45). With the matter unresolved as to Li, the order also directed Night Owl to advise the Court by October 18, 2019 whether it intended to proceed against Li. *Id.*

Night Owl timely responded that it still wanted to proceed against Li. (Doc. 48). And against the backdrop of the Court having ordered Night Owl some seven months earlier to diligently perfect service on Li via the central authority in China, Night Owl also asked the Court to set a January 16, 2020 deadline for serving Li with process. (Doc. 47).[10] Under these circumstances, one might reasonably expect that by October 2019, Night Owl's efforts to serve Li with process were well underway. Indeed, in its motion to set a January 2020 deadline for perfecting service on Li, Night Owl repeatedly, though falsely, represented that Li was "evading service" (Doc. 47, ¶¶ 9, 10), and misleadingly hedged that it had not attempted service of process "through the formal means under

---

[10] While Rule 4 expressly states that service in a foreign country is not subject to the Rule's presumption that service of process can be perfected within ninety days of the initiation of the action (Fed. R. Civ. P. 4(m)), the time to perfect service in a foreign country is not without limit. "Good faith and reasonable dispatch are the proper yardsticks." *Lozano v. Bosdet*, 693 F.3d 485, 489 (5th Cir. 2012). *See also Harris v. Orange S.A.*, 636 F. App'x 476, 485-486 (11th Cir. 2015) (citing *Lozano v. Bosdet* with approval and "holding that a plaintiff's complaint may be dismissed upon a showing that she failed to exercise diligence in attempting to effectuate service on a foreign defendant").

Rule 4(f)" (Doc. 47, ¶ 5). Truth be told, having never asked the Clerk to issue a summons directed to Li,[11] Night Owl never attempted to serve Li through **any** means, and so Li could not have been evading it. Thus, on closer inspection, it appears Night Owl led the Court to erroneously find good cause to give Night Owl nearly a year to perfect service on Li. (Doc. 49). Rather, with Night Owl exercising neither diligence nor reasonable dispatch during the seven months after being **ordered** to **diligently** attempt service via China's central authority, the extension to January 2020 to perfect service should have been characterized at the time as a grant of mercy.

Inexplicably, Night Owl did not use the additional time to simply obtain a summons from the Clerk and furnish the necessary documents to China's central authority for service on Li. Instead, it appears Night Owl waited until the end of October 2019 to look into working with the central authority (Doc. 51-1, ¶ 3), and apparently not wanting to trouble itself with the effort, Night Owl instead filed **another** request to use an alternative means of service under Rule 4(f)(3), along with a motion to extend the January 16, 2020 deadline to serve Li.

**Night Owl's Repetitive Requests for Alternative Service and More Time**

In its motion for additional time to serve Li with process (Doc. 52), Night Owl requests the time be extended to sixty days after the Court rules on Night Owl's second motion for an alternative to the Hague Service Convention (Doc. 51). But as a threshold matter, Night Owl fails to invoke the applicable rule. The motion for more time is based on Rule 4(m), but as discussed above, Rule 4(m) "does not apply to service in a foreign

---

[11] The undersigned apparently overlooked this detail when ruling on Night Owl's October 2019 motion for more time to serve Li.

country." Fed. R. Civ. P. 4(m). Further, because Night Owl's motion seeks to extend a court-ordered deadline, it is governed by Rule 6(b), which allows but does not require a request for more time to be granted for good cause. *See* Fed. R. Civ. P. 6(b). With no attempt to show that its request satisfies Rule 6(b), Night Owl's motion could be denied on that basis alone. Nonetheless, the Court finds Night Owl fails to present good cause for at least three reasons.

First, Night Owl has allowed an inordinate amount of time to pass without taking any steps to serve Li with process. Before Night Owl filed its second request for more time, nearly a year had passed without any effort at service, and to this day—more than eighteen months after the initiation of this action—Night Owl hasn't even completed step one: having the Clerk issue a summons, which is automatically done upon request.

Second, and making Night Owl's dilatory conduct that much more flagrant, the Court ordered Night Owl at the outset "to make diligent efforts" to serve Li with process (Doc. 19). But Night Owl has stubbornly refused.

And third, the filing of a second request for permission to forego use of the Hague Convention did not abate Night Owl's court-ordered obligation to diligently perfect service. It is plaintiff's, and not the Court's, responsibility to timely perfect service of process. *See* Fed. R. Civ. P. 4(c)(1). And yet Night Owl has chosen to do nothing but wait on an overly burdened Court to dispose of its second effort to evade the Convention.

Given less egregious facts than these, courts have not just refused to grant more time for service but have dismissed the claims altogether. *See*, *e.g.*, *Harris*, 636 F. App'x at 485-486 (affirming dismissal of claims against foreign defendants when plaintiff made no attempt to serve them for eight months, and then decided to forego any such effort

until after an interlocutory appeal was resolved). Thus, for lack of good cause, the request for additional time to serve Li must be denied.

With the time for service having expired, Night Owl's second motion for permission to forego use of the Hague Convention is moot. Nonetheless, the Court finds the motion must also be denied because, without any proper basis, it functionally seeks reconsideration of the Court's order denying Night Owl's first request to evade the Convention. (Doc. 23). While the alternative methods of service presented in the two motions are different, the object is the same: avoidance of the Hague Service Convention.

With no showing that a diligent attempt to use the Convention had proven inadequate, or that any such attempt would be futile, the Court declined Night's Owl's first request to authorize alternative service. *Id.* Nothing has changed since. Night Owl has not suggested any error in the Court's refusal to authorize alternative means of service; Night Owl has made no attempt to utilize the Convention, or show that use of the Convention would be futile; nor has Night Owl suggested any intervening change in the law. Consequently, the second motion to authorize an alternative means of service is without merit.

Accordingly, Plaintiff's Application for Order Authorizing Alternate Service of Process on Defendant Jun Li (Doc. 51), and Motion for Additional Extension of Time to Serve Defendant Jun Li (Doc. 52) are **DENIED**.

**DONE** and **ORDERED** in Fort Myers, Florida on September 9, 2020.

NICHOLAS P. MIZELL
UNITED STATES MAGISTRATE JUDGE